# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| CHARLES ALEXANDER SMITH, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09CV00031 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: James P. Jones |
| COMMISSIONER OF | ) | Chief United States District Judge |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Stephen M. Ball, Assistant Regional Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Charles Alexander Smith, Sr., filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401- 433, 1381-1383d (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A.§ 405(g) and 1383(c)(3).

Smith filed for benefits in September 2006, alleging disability beginning June 13, 2005, due to a back injury. Smith's claims of disabling injuries expanded in 2006, after a gun misfired into Smith's right eye and face. Smith alleges he is now disabled due to his back injury, pain in his back and right eye, and depression. His claim was denied initially and upon reconsideration. Smith had a video hearing before an administrative law judge ("ALJ"), during which Smith, represented by counsel, and a vocational expert testified. The ALJ denied Smith's claim and the Social Security Administration's Appeals Council denied Smith's request for a review of the ALJ's opinion. Smith filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, and have briefed and orally argued the issues. The case is ripe for decision.

II

Smith was forty-years old when he filed for disability, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(e) (2009). He completed two years of high school and was most recently employed as a truck driver for a concrete firm. Smith has also worked as a fast food worker and a farm laborer.

In June 2005, Smith was crushed by two concrete forms weighing 4,000 pounds each. Immediately after the accident, Smith sought treatment for pain in his chest and lower back. Smith's chest injury eventually healed, but he continued to complain about pain in his buttock and left hip that radiated down his left leg. In September 2005, a neurosurgeon diagnosed Smith with a ruptured disk at the L5-S1 level and recommended surgery, which Smith obtained. After the surgery, Smith told medical personnel that his conditioned had improved, but he still had a shooting pain down his left leg. An MRI showed that Smith had residual left L5-S1 disk herniation with the possibility of left S1 nerve root compression. The MRI also revealed moderate L5-S1 disk degeneration. Smith attended physical therapy for several weeks, during which his pain decreased and his mobility improved. Smith's neurosurgeon opined that Smith had improved since surgery and although Smith could not return to his prior job he could perform a "light duty job." ( R. at 266.)

In November 2006, Smith was injured in a firearm accident. Smith suffered injuries to his skull, sinuses, and right eye. An ophthalmologist diagnosed Smith with 20/40 uncorrected vision in his left eye and 20/400 vision in his right eye due to traumatic cataract with superonasal retinal detachment. Smith had surgery to repair the detached retina and cataract. After the surgery, Smith had limited vision in his

right eye, and he occasionally suffered from double vision, which he corrected by wearing a patch.

In 2007, Smith sought assistance from an ophthalmologist for his right eye. The doctor opined the Smith had trauma to the right side of his face from the accident and that he had a tripod fracture of the orbital rim. The doctor diagnosed Smith with double vision correctable with an eye patch, and uncorrected right eye pinhole vision of 20/200. The doctor told Smith that surgery could help with the position of Smith's eye and his double vision, but it would not improve his "visual acuity." (R. at 607.)

That same year, Smith saw his primary physician about a variety of ailments including back pain and depression. The doctor prescribed Paxil and Smith began counseling sessions with a social worker. By October 2007, Smith told the social worker that he was "becoming increasingly less depressed" and that his motivation and interests had returned. (R. at 647.)

The ALJ found that Smith was able to perform his past relevant work as a fast food worker and could perform a full range of light work. The ALJ concluded Smith was not disabled as defined in the Act.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and

mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197 (1938))*. This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Smith argues the ALJ failed to analyze the cumulative effect of Smith's medical problems. I disagree.

To determine "whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (per curiam). Additionally, "the ALJ must adequately explain his or her evaluation of the combined effect of impairments." *Id.* at 59. "This rule merely elaborates upon the general requirement that a ALJ is required to explicitly indicate the weight given to relevant evidence." *Id*.

The record demonstrates that the ALJ considered each of Smith's alleged impairments individually and in combination with one another. Medical records from Smith's neurosurgeon, as well as the findings of two non-examining state agency physicians, demonstrate that Smith's back problems do not meet the listing of impairments under 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2009). The record shows that Smith suffered from moderate L5-S1 disk degeneration and residual damage from a L5-S1 disk herniation. Smith's medical records do not indicate he has nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss, which are all all requirements of § 1.04.

In addition, Smith's treating neurosurgeon, James Vascik, M.D., found that Smith's back had healed and that Smith could return to work with a forty-pound weight restriction or Smith could work in a light duty job. (R. at 266, 284.)

The record demonstrates that Smith's right eye problems do not meet the standard for disability under 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.02 (2009). Under § 2.02, a claimant must have remaining corrected vision in the better eye of 20/200 or less. Medical records state that Smith retained corrected distance vision of 20/20 in his left eye and 20/200 in his right eye, with corrected near vision of 20/30 in both eyes. Thus, substantial evidence supports the ALJ's finding.

The ALJ also considered Smith's claim of depression, finding it was nonsevere and did not meet the standards for mental disabilities under 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C (2009). The record supports this conclusion. At his hearing and in forms that he completed, Smith stated he could care for himself, shop, prepare simple meals, and drive himself and others. Smith also stated that he took walks, wanted to seek a hunting license, and frequently visited with his mother. These facts support the ALJ's finding that Smith has a mild limitation in daily living and social functioning. Smith's statements that he could pay his own bills, balance a checkbook, and watch TV, serve as a factual basis for the ALJ's conclusion that Smith had a mild limitation in concentration. In addition, the record indicates that Smith did not have

any episodes of decompensation. Thus, the ALJ did not err in concluding that Smith's mental impairment was not disabling under the Act.

The determination of Smith's RFC demonstrates that the ALJ considered each alleged ailment and how a combination of these problems would impact Smith's ability to work. This is evidenced by the ALJ's conclusion that Smith could only perform light duty work because Smith had a limited ability to lift and carry weight, he could only sit, stand, or walk for a six hours a day, and his right eye had limited vision. The record demonstrates that there was substantial evidence to support the ALJ's finding that a combination of Smith's injuries was not disabling.

Smith also argues that the ALJ erred by failing to give controlling weight to the opinion of Jay N. Ramage, M.D., Smith's primary care physician. Dr. Ramage indicated on a form that Smith suffered from severe emotional problems and that Smith could not work for more than 90 days.

Under *McClain*, 715 F.2d at 869, an ALJ must consider the opinions and diagnoses of treating medical professionals. Generally, an ALJ must give more weight to the opinion of a treating physician, but a treating physician's opinion does not have to be given controlling weight. 20 C.F.R. § 404.1527(d)(2) (2009); *Craig*, 76 F.3d at 590. And, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." *Id.*; *see also* 20 C.F.R. § 416.926 (2009); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (July 8, 1996). A finding of disability by a treating physician is not controlling. Rather, a physician's opinion regarding a claimant's disability is an administrative finding since the Commissioner bears responsibility for determining whether an individual is disabled under the Act. *Id.*

The ALJ did not err by not relying upon Dr. Ramage's opinion. The primary care physician indicated on a form that Smith could not work due to chronic back pain. But evidence in the record indicates that Smith's impairment did not prevent him from walking, hunting, driving, or performing tasks around his home. In addition, Dr. Ramage failed to discuss how he reached his conclusions and whether he performed any tests or examinations of Smith's back.

The record does not support Dr. Ramage's conclusion that Smith had a poor ability to make social and occupational adjustments. Medical records show that Dr. Ramage and a treating social worker stated that Smith suffered from depression. And, the same records demonstrate that Smith stated that his Paxil prescription had helped alleviate his depression, and that his "motivation and interests have returned." (R. at 647.) Smith's mood was "stable" (R. at 605), he was able to care for himself, and he did not suffer any periods of decompensation. These facts do not support the conclusions about Smith's work ability reached on the form completed by Dr.

Ramage. In addition, the form does not contain a narrative explaining how Dr. Ramage reached his conclusions and whether he used objective diagnostic evidence or clinical findings to determine Smith's workplace effectiveness and physical limitations.

The ALJ did not err by declining to rely upon Dr. Ramage's opinion because the physician's conclusions were not supported by examinations, clinical tests, or diagnostic evidence.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: February 1, 2010

/s/ JAMES P. JONES
Chief United States District Judge